# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael E. Hamm, | ) CIVIL ACTION NO. 9:15-4400-RMG-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Harold Alexander, NFN Hickman, | ) |
| NFN White, NFN Trapp, | ) |
| and Galen Sanders, | ) |
| | ) |
| Defendants. | ) |

This action was originally filed by the Plaintiff in the South Carolina Court of Common Pleas, Richland, County. Plaintiff, a civilly committed inmate under the South Carolina Sexually Violent Predator's Act (SVPA), S.C.Code Ann. § 44-48-60, et seq., has filed this action pro se. As Plaintiff asserts his claims through 42 U.S.C. § 1983[1] as well as the Americans with Disabilities Act (ADA), and/or § 504 of the Rehabilitation Act, the Defendants removed the case to this United States District Court on October 29, 2015 on the basis of federal question jurisdiction. Plaintiff also apparently asserts a state law cause of action under the Omnibus Adult Protection Act, S.C. Code Ann. § 44-35-5, et seq.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 1, 2016. As the Plaintiff is proceeding pro se, a Roseboro order was entered

---

[1]42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999).



1

by the Court on April 6, 2016, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the motion for summary judgment on May 17, 2016, to which the Defendants filed a reply memorandum on May 27, 2016. Plaintiff filed sur reply on June 16, 2016.

The Defendants' motion is now before the Court for disposition.[2]

### Background and Evidence

Plaintiff, a frequent filer of litigation in the state and federal courts, alleges in his Complaint[3] that he is confined at the Broad River Correctional Institution (part of the South Carolina Department of Corrections - SCDC), where he is in the Sexually Violent Predator Treatment Program. Plaintiff alleges generally that the medical care and treatment he is provided is inadequate, that the medical staffing at the facility where he is held is "below the accepted professional standards", and that the conditions of his confinement are "impermissibly punitive and restrictive in the medical care and treatment area". Plaintiff asserts three specific issues in his Complaint, as follows: Inhaler (Issue One), TENS unit (Issue Two), and Behavior Management Committee

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]Plaintiff filed both an original Complaint and an "Amendment" to his Complaint in state court, prior to removal. Although Defendants note that Plaintiff's "Amendment" was never ruled on prior to removal, in light of Plaintiff's pro se status these filings have been considered together as Plaintiff's "Complaint" in this action. However, neither of these filings is a verified pleading, so the allegations contained therein have not been considered as evidence in this case. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) [Noting that *verified* complaints by pro se litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge].



Referral (Issue Three).

          With respect to his <u>Issue One</u>, Plaintiff alleges that on or about August 19, 2015 he went to the "medication call" and used his inhaler. However, Plaintiff alleges that when he went back to medication call the following day, August 20, 2015, and asked the Defendant Nurse Trapp for his inhaler, Trapp responded that he could not find it. Plaintiff alleges that Trapp then told him that he would order Plaintiff another inhaler. However, Plaintiff alleges that when he returned to medication call the next day, August 21, 2015, and asked Trapp if his inhaler had come in, he stated "no" and (apparently) indicated that it had not been ordered yet. Plaintiff alleges that that was a Friday, and that he did not receive a new inhaler until Tuesday, August 25, 2015. Plaintiff alleges that he suffers from COPD (emphysema), that he uses his inhaler at night to help him breathe better, that not having his inhaler caused him to not be "able to breathe right" and sleep deprivation, and that the Defendant Trapp having allowed his inhaler to "just disappear out of my slot in the medication cart" constitutes deliberate indifference to his serious medical needs. Plaintiff has attached to his Complaint as an exhibit a Request to Staff form relating to this issue.

          With respect to his <u>Issue Two</u>, Plaintiff alleges that he has a medical condition in both of his legs (Plaintiff alleges that "they" believe his condition to be fibromyalgia). Plaintiff alleges that he had an allergic reaction to a medication he was given, so the neurologist sent him to physical therapy to see about obtaining a TENS unit. Plaintiff alleges that a TENS unit sends an electrical pulse through electrodes which stops his pain receptors from "firing continuously". Plaintiff alleges that on or about August 19, 2015 he returned his TENS unit to medical and let a nurse "Cauthern" know that the battery in his TENS unit was dead. This was about 1:00 p.m. Plaintiff alleges that around 5:00 p.m. he went back to get his TENS unit, but that when he put his TENS unit on it "went dead after 30 minutes". Plaintiff alleges that he told the Defendant Nurse Trapp that the battery in



3

his TENS unit was dead, and that Trapp told the Plaintiff that he would look for some more batteries. However, at around 8:00 p.m., Trapp told him that he could not find any batteries. Plaintiff alleges that the following day, August 20, 2015, he notified the Defendant Nurse Alexander that the battery was dead in his TENS unit, but that even though Alexander along with the Defendant Nurse Hickman looked for some batteries, they could not find the "box of batteries that were for my TENS unit". Plaintiff alleges that on August 21, 2015 he asked a "Mr. Smith" whether any batteries had been ordered, and that Smith replied that they had been ordered and that it would take around a day to get them. Plaintiff alleges that he following day (August 22, 2015) he was called to the medical unit where a nurse gave him his TENS unit, but that when he turned it on it still had the old battery in it. Plaintiff alleges that as of August 23, 2015, he still did not have any new batteries for his TENS unit. Plaintiff alleges that he tries to use the TENS unit to get some relief, but that the voltage is "not enough" to get relief (apparently using the old batteries) because the voltage is not enough to stop the pain.

In an "Addendum" to this claim, Plaintiff alleges that he caught Nurse Hickman "in a lie", because even though Hickman told him that she herself had replaced the battery in his TENS unit, that he had put a piece of paper where the battery is and the paper was still "in the same place". Further, Plaintiff alleges that he could tell that it was not a new battery "due to the intensity of the surge of the voltage into my body". Plaintiff alleges that Defendants Trapp, Alexander, Hickman and White were all deliberately indifferent to his medical condition. Plaintiff has attached as an exhibit to this claim a copy of a Request to Staff form relating to this issue.

With respect to his Issue Three, Plaintiff alleges that on or about August 27, 2015 the Defendant Hickman came "on the milieu" looking for the Plaintiff to see if he wanted his TENS unit. Plaintiff alleges that when he asked Hickman if the batteries had been replaced, she responded



4

that "she had replaced it two days ago". Plaintiff alleges that when he told Hickman that that was not the truth since the piece of paper he had in place to keep the battery tight was still there, she stated that he [Plaintiff] had put another piece of paper in place, to which Plaintiff stated no he had not. Plaintiff alleges that Hickman also told him that he was not to put paper in to keep the battery tight, and that if there was a problem they would just order a new one. Plaintiff alleges he told Hickman that if she would bring him a small screwdriver, that he could fix the problem. Plaintiff alleges that Hickman then came back and handed him the TENS unit, but when he turned it on it did not work. Plaintiff alleges that he then slid open the cover and observed that Hickman had put the battery in backwards. Plaintiff alleges that Hickman then "fought to get it back out", and that in doing so she "bent the negative prong worse than what it was", so that no matter how the moved the unit would shut off. Plaintiff alleges that he then went into his room and took the top of his pen off and pulled the prong out a little to make better contact.

Plaintiff alleges that Hickman then returned and told him that they had ordered him a new unit, at which time he told her that he had fixed the unit he had. Plaintiff alleges that Hickman responded that he was not supposed to have done that, and that he then received a write up for fixing the TENS unit and was referred to the Behavior Management Committee by Nurse Alexander (the charge nurse) with the allegation being that "[Plaintiff] was told by [Alexander] not to alter TENS unit, he stated he used an 'ink pen' to 'fix' prong". Plaintiff alleges, however, that Alexander did not even talk to him until after he had fixed the TENS unit. Plaintiff has attached to the Complaint a copy of the Notice of Referral to the Behavior Management Committee, which notes that a committee meeting would be scheduled for the week of August 28, 2015.

Plaintiff seeks injunctive and/or declaratory relief, to include training for the medical staff at the facility and to have his "green level" restored, as well as monetary damages. <u>See</u>



generally, <u>Plaintiff's Original Complaint</u>.

In the "Amendment" to his Complaint, Plaintiff has added an <u>Issue Four</u>, in which he alleges that on or about August 27, 2015 he was charged with an infraction as is set forth in Issue Three, but that even though the referral notice states that he is encouraged to provide written information to the Committee prior to the hearing date, to include potential witnesses, that he was never given the chance to do this. Plaintiff alleges that he was called before the Behavior Management Committee on August 28, 2015 to "answer for the said charge", but that certain staff did not know about or did not really understand the issues at the hearing. Plaintiff states that "the outcome of the tribunal on or about 8/29/15 is still hanging over my head - since no consequences have been handed down or the charges dropped". Plaintiff has attached a hand written exhibit which purports to be disciplinary procedure requirements.

Finally, Plaintiff's "Amendment" also includes a new "Issue Five", wherein Plaintiff alleges that on December 16, 2009 he became an ordained minister with full credentials as a "true worshiper". Plaintiff alleges that as a part of this religion, he does not believe that women should sit in judgment of him. However, it does not appear that Plaintiff intended for this issue to be a claim in this case, as Plaintiff noted that he had another federal court action (Civil Action No. 9:15-2552) that was addressing that claim.[4] <u>See</u> <u>generally</u>, <u>Plaintiff's filings, considered together as his "Complaint"</u>.

In support of summary judgment in this case the Defendants have submitted an affidavit from Kimberly Rudd, who attests that she is employed by the South Carolina Department of Mental Health as the Medical Director for the Division of Inpatient Services. Dr. Rodd attests

---

[4]That lawsuit, <u>Hamm v Jones, et al.</u>, Civil Action No. 15-2552, was dismissed at summary judgment on June 14, 2016. <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records].



that she received her medical degree in 2003, and is also currently an assistant professor at the University of South Carolina School of Medicine.

      Dr. Rudd attests that Plaintiff is a resident of the Sexually Violent Predator Treatment Program, which is operated by the South Carolina Department of Mental Health. With respect to Plaintiff's complaint about being without an inhaler from August 20, 2015 until August 25, 2015, Dr. Rudd attests that Plaintiff's medical records reflect that on January 6, 2015 he was seen by Dr. Mohammad Shaukat and Dr. Brian Smith, both pulmonologists at the USC specialty clinics, as a follow up for pulmonary function tests (PFT) that Plaintiff had had performed. Dr. Smith noted in his filings that Plaintiff had no active respiratory complaints and that he was in no distress, further noting that Plaintiff has "SOB [shortness of breath] with exertion (after walking one mile)". On examination Plaintiff was found to have a respiratory rate of sixteen breaths per minute, which is a normal respiratory rate for an adult; that Plaintiff's lungs were mostly clear bilaterally with no obvious rhonchi or crackles; and that he had an oxygen saturation rate of 98%. Further, Plaintiff's PFT's did not show any evidence of obstruction, and while he did have some air trapping, he did not have any symptoms of cough or SOB. Plaintiff was advised to use an albuterol inhaler on "prn basis only". Dr. Rudd has attached a copy of Plaintiff's medical records from January 6, 2015, which document these filings, to her affidavit as an exhibit.

      Dr. Rudd attests that as a result of these January 6, 2015 findings, an inhaler was ordered for the Plaintiff on January 7, 2015, and was delivered on that same date. Dr. Rudd further attests that if Plaintiff used the inhaler four times a day it would need to be replaced approximately every twenty five days, that the pharmacy records show that an inhaler for the Plaintiff was sent to his Unit on January 7, 2015; June 1, 2015; July 28, 2015; August 25, 2015; October 9, 2015; and December 24, 2015, and that these records therefore reflect that Plaintiff was using the inhaler on



a relatively infrequent basis, which was consistent with Dr. Smith's direction that it be used only when needed.

Dr. Rudd attests that in her professional opinion to a reasonable degree of medical certainty, the five days that Plaintiff alleges he was without an inhaler in August 2015 most probably did not present any medical issues or concerns for him, nor do his medical records reflect any episodes of respiratory distress experienced by the Plaintiff or any respiratory complaints during that time frame. Further, although Plaintiff complains in his Complaint about the lack of an inhaler affecting his sleep, the records from the pulmonologist reflect that Plaintiff had symptoms of shortness of breath only with exertion, and he therefore should not have been experiencing any respiratory symptoms such as shortness or breath or having difficulty breathing while he was at rest and/or asleep. See generally, Rudd Affidavit, with attached Exhibit.

The Defendant Harold Alexander has submitted an affidavit wherein he attests that he is a registered nurse employed by the South Carolina Department of Mental Health, and is currently assigned to the Sexually Violent Predator Treatment Program. Alexander attests that he has had numerous interactions with the Plaintiff, including having issued Plaintiff a TENS unit that he uses to help manage pain. Alexander attests that Plaintiff has had access to a TENS unit whenever he has needed one, and has used two different TENS units. Alexander attests that the first TENS unit Plaintiff had used regular batteries, and that the nurses stationed at the Edisto Unit (where Plaintiff was housed) had a box of batteries that was used to replenish this TENS unit whenever they were alerted that it was out or low on battery power. Alexander attests that if Plaintiff would tell either him or another nurse in the Edisto Unit that his TENS unit needed new batteries, the batteries were replaced. However, at some point Plaintiff began to tamper with the TENS unit he was using, and that once the program staff learned of this tampering, he was advised

8



not to do so.  However, Alexander attests that despite being advised not to tamper with his TENS unit, Plaintiff continued to do so, using a pen to tamper with the battery prong of the TENS unit, resulting in the TENS unit no longer being functional.

Alexander attests that the non-functioning TENS unit was then replaced with a new TENS unit the next day.  This TENS unit has the ability to use rechargeable batteries as its power source, and Alexander attests that the nurse station in the Edisto Unit has a battery charger that is used to keep the batteries fully charged.  Alexander attests that he is not aware of Plaintiff having any issues with his new TENS unit, nor is he aware of any TENS unit being used by the Plaintiff having any issues until he tampered with it.  See generally, Alexander Affidavit.

The Defendant Charleen Hickman has submitted an affidavit wherein she attests that she is a registered nurse employed by the Department of Mental Health, where she works with the SVP treatment program.  Hickman attests that she is one of the nurses assigned to medical in the Edisto Unit, where she has occasion to interaction with the Plaintiff.  Hickman attests that most of the time she interacts with the Plaintiff is when he is requesting pain medication and to use the TENS unit.  Hickman attests that Plaintiff was originally given a TENS unit by Department of Mental Health physical therapy, and that once the TENS unit was issued Plaintiff was able to use the TENS unit daily.  Hickman attests that normally Plaintiff would request a TENS unit in the morning and then turn it back in in the afternoon when he felt like it.  Hickman attests that she never told Plaintiff he had to turn the TENS unit back in, as he could keep it as long as he liked, but that Plaintiff would always turn in his TENS unit in the afternoon on his own accord.

Hickman attests that she recalls that at some point Plaintiff would request new batteries for the TENS unit, and that every time Plaintiff requested new batteries she always replaced the old batteries with new batteries.  Hickman attests that sometime prior to August 27, 2015, she



9

noticed a piece of blue paper placed in the battery slot of the TENS unit, following which she immediately told the Plaintiff not to tamper with the TENS unit. However, after Plaintiff had been advised not to tamper with the TENS unit, he requested a screwdriver to alter the TENS unit and was advised that he could not do so. Even so, Hickman attests that despite being advised on two different occasions not to alter the TENS unit, Plaintiff advised her on August 27, 2015 that he had used an ink pen to alter one of the prongs connected to the battery. At that time, a Behavior Observation Note was completed, and Plaintiff was referred to the Behavior Management Committee. Hickman has attached to her affidavit a copy of that observation note as Exhibit A.

Hickman attests that after Plaintiff altered the TENS unit, that unit had to be returned to physical therapy, and the SVP Treatment Program was then issued a new TENS unit for Plaintiff to use. Hickman attests that the new TENS unit has the ability to utilize rechargeable batteries, and that Plaintiff is currently still using this TENS unit. Hickman attests that at no time was Plaintiff without the use of a TENS unit, nor is she aware of Plaintiff making any complaints about the second TENS unit. Hickman further attests that at no time did she alter either of these TENS units. See generally, Hickman Affidavit, with attached Exhibit.

Finally, the Defendants have submitted an affidavit from Cynthia Helff, who attests that she is employed by the Department of Mental Health as a Program Manager I in the Sexually Violent Predator Treatment Program. Helff attests that as a Program Manager I, she is the Chair of the Behavior Management Committee. Helff attests that when this Committee meets as a result of a resident being written up for infractions, the resident is first informed of why they received the write up. At that point, the resident is allowed to either dispute or agree with the infractions, and is allowed to request witnesses if needed. Once the resident has spoken with the Committee, the Committee then decides if the infractions were warranted, and if so, what the resulting actions will



be.  Helff attests that if the resident does not agree with the results of the Behavior Management Committee, he can file a grievance to the Resident Advisor.  If the resident does not agree with the decision of the Grievance Committee in regards to his grievance, they can then appeal the grievance to the Deputy Director of the Department of Mental Health Inpatient Services.

Helff attests that she received of Plaintiff's referral to the Behavior Management Committee regarding the altering of his TENS unit, and that Plaintiff was originally scheduled to appear before the Committee during the week of August 28, 2015.  However, after meeting with the Plaintiff the week of August 28, 2015 and consulting with administrative staff, it was decided that the Behavior Management Committee was not the best venue to handle this issue, following which administrative and treatment staff were informed of this decision.  Helff attests that Plaintiff never received any type of consequences or penalties from the Behavior Management Committee in regards to this referral, nor did this referral affect Plaintiff's level status.

Helff attests that Plaintiff is currently on red level as a result of his level being dropped by the Behavior Management Committee for an infraction on November 24, 2014.  Helff attests that Plaintiff was eligible to apply for green level on March 10, 2015, but that he has been unable to advance to green level due to low treatment participation scores.  Helff attests that Plaintiff's current level has no relation to his referral for altering the TENS unit.  See generally, Helff Affidavit, with attached Exhibit [Notice of Referral].

As attachments to his response to the Defendants' motion for summary judgment, Plaintiff has submitted a copy of a Resident Outgoing Mail form dated March 27, 2016, along with a copy of what purports to be Plaintiff's "Second Set of Continuing Interrogatories", also dated



March 27, 2016. Plaintiff complains in his response that this discovery was never responded to,[5] but makes no other arguments for why summary judgment should not be granted in this case.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review of the evidence and arguments submitted, the undersigned find for the reasons set forth hereinbelow that the Defendants should be granted summary judgment in case.

---

[5]The undersigned is constrained to note that the discovery deadline in this case had long since expired prior to the date shown on these exhibits.

12



# I.

## (Constitutional Claim)

Plaintiff is being held by the State Department of Mental Health pursuant to the provisions of the SVPA. The SVPA and its procedures have been upheld as a constitutionally valid exercise of the State's power to protect citizens from sexually violent predators. In re: Luckabaugh, 568 S.E.2d 338 (S.C. 2002). Under the SVPA, an individual convicted of a sexually violent offense may continue to be held following release from a prison sentence if they are classified as a sexually violent predator; see S.C. Code Ann. § § 44-48-60, 44-48-70; and the SCDC and the Department of Mental Health have entered into an interagency agreement whereby the Sexually Violent Predator Treatment Program residents are housed in a segregated location within the Broad River Correctional Institution (BCI), which is part of the SCDC system.

As an involuntarily committed patient, Plaintiff retains a liberty interest in receiving reasonable care in a reasonably non-restrictive condition of confinement. Youngberg v. Romeo, 457 U.S. 307, 324 (1982); see Seling v. Young, 531 U.S. 250, 265 (2001) ["[D]ue process requires that the conditions and duration of confinement under the [Sexually Violent Predator] Act bear some reasonable relation to the purpose for which persons are committed"]. As a civilly committed inmate, Plaintiff's custody status most closely resembles that of a pre-trial detainee. Lingle v . Kibby, 526 Fed.Appx. 665, 667 (7th Cir. Apr. 15, 2013) [Civilly committed persons are treated as pretrial detainees]; Valbert v. South Carolina Dep't. of Mental Health, No. 12-1973, 2013 WL 4500455 at * 9 (D.S.C. Aug. 20, 2013) [same]; Treece v. McGill, No. 08-3909, 2010 WL 3781695 at * 4 (D.S.C. Sept. 21, 2010)["A civilly committed individual under the SVPA most closely resembles the custody status of a pre-trial detainee."] (quoting LaSure v. Doby, No. 06-1527, 2007 WL 1377694 at * 5 (D.S.C. May 8, 2007); Tillman v. Dixon, No. 10-5032, 2011 WL 5119187 at



* 9 (W.D.Wash. Aug. 12, 2011)[The rights of those civilly committed are analyzed using same standards that apply to pretrial detainees], adopted by, 2011 WL 5118750 (W.D.WAsh. Oct. 27, 2011); cf. Larch v. Gintoli, 04-1962, 2006 WL 895019, at ** 3-4 (D.S.C. Mar. 31, 2006). Therefore, Plaintiff's conditions of confinement claim is evaluated under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535, n. 16 (1979); but see also Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988) [Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections].

To the extent that Plaintiff is alleging in this lawsuit that his constitutionally protected rights are being violated because he is receiving inadequate medical treatment and care for his complaints, in order to survive summary judgment Plaintiff must have evidence sufficient to show that "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment". Youngberg, 457 U.S. at 323. Further, "[i]n determining whether the State has met its obligations . . . decisions made by the appropriate professional are entitled to a presumption of correctness. Such a presumption is necessary to enable institutions of this type . . . to continue to function". Id, at 324. Therefore, in order to avoid summary judgment, the evidence must be sufficient to create a genuine issue of fact as to whether any named Defendant failed to exercise the level of professional judgment required by Youngberg. See Patten v. Nichols, 274 F.3d 829, 838 (4th Cir. 2001) [Denial of medical care claim brought by an involuntarily committed patient "must be measured against the professional judgment standard articulated by the [Supreme] Court in Youngberg"]; see also Kollyns v. Chavez, No. 05-3022, 2006 WL 2459484, at * 2 (D.S.C. Aug. 23, 2006) ["To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints"]. Plaintiff has



failed to submit any such evidence.

First, none of the exhibits Plaintiff attached to his Complaint (consisting of two Request to Staff forms, a copy of the Notice of Referral to the Behavior Management Committee, and his hand written "disciplinary procedure requirements") present a genuine issue of fact as to whether any named Defendant substantially departed from any accepted professional judgment, practice or standard in administering or providing care to the Plaintiff. Plaintiff's two Request to Staff forms simply reiterate the allegations Plaintiff sets forth in his Complaint about the four days he went without having an inhaler and his dispute with medical personnel concerning whether his TENS unit was properly charged. Neither exhibit constitutes medical evidence or shows that Plaintiff suffered any serious medical attack or complication during the time periods at issue. Conversely, the Defendants have provided actual medical records as well as affidavits from medical professionals, including a physician, and attesting to a reasonable degree of medical certainty that Plaintiff received proper care during the relevant time period. See Savidge v. Fincannon, 836 F.2d 898, 907-908 (5th Cir. 1988) [Civilly committed patient's right is to "minimally adequate . . . medical care"]; cf. Patten, 274 F.3d at 845-846 [Granting summary judgment where the evidence was insufficient to give rise to a genuine issue of fact that the defendants "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional."]; see also Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]).

Even assuming that Plaintiff's allegations that there was a delay in his obtaining a new inhaler because Trapp "forgot" to reorder his inhaler, or that Hickman was not putting fresh batteries into his TENS unit so it was not providing as strong of a charge as it otherwise might have,



to be true for purposes of summary judgment, such claims do not rise to the level of a constitution violation. Cf. Rumsey v. Martin, 28 F.Appx. 500, 502 (6th Cir. 2002) [Delay in filling prescription for inhaler was not actionable given lack of medical evidence that established detrimental effect of delay]; Garvin v. Fairman, No. 94-4435, 1995 WL 548638, at * 4 (N.D.Ill. Sept. 13, 1995) [One week delay in procuring an asthma inhaler not a sufficiently serious deprivation to violate due process rights of detainee]; Scott v. Koenigsmann, No.12-1551, 2016 WL 1057051, at * 11 (N.D.N.Y. Mar. 4, 2016) [Three day delay in receiving TENS unit was not a constitutional violation where Plaintiff failed to produce any evidence that he suffered substantial harm]; Davis v. Michigan Department of Corrections, No. 13-1231, 2015 WL 5179393, at * 16 (W.D.Mich. Sept. 4, 2015) [No constitutional violation where Plaintiff was without TENS unit for five days when he was placed in segregation]; Savidge, 836 F.2d at 842 [Civilly committed patient's right is to "minimally adequate . . . medical care"]; see also Deans v. Wadman, No. 12-662, 2013 WL 6050348, at * 3 (D.S.C. Nov. 15, 2013) [Citing to Youngberg standard and noting that a "Plaintiff who claims a delay in medical treatment rose to a constitutional violation must provide verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed"]; Kollyns v. Chavez, No. 05-3022, 2006 WL 2459484, at * 2 (D.S.C. Aug. 23, 2006) ["Professional judgment standard requires more culpability than mere negligence"].

Nor has Plaintiff presented any evidence to give rise to a genuine issue of fact as to whether his constitutional rights were violated when he was referred to the Behavior Management Committee for tampering with or altering his TENS unit. Plaintiff admits that he tampered with the TENS unit, both by using an ink pen to alter the battery connection as well as by placing paper in the battery compartment. In any event, there is no evidence whatsoever that the Behavior Management Committee even took any action on this referral, nor has Plaintiff presented any



evidence to show that this referral has affected his custody level.  Plaintiff states in his pleading that at the time he filed his Complaint the referral was still pending before the Behavior Management Committee, and the Defendants have submitted in conjunction with their motion for summary judgment an affidavit attesting that the Committee took no action on this referral and that Plaintiff suffered no adverse consequences as a result thereof.  Plaintiff has failed to submit any competent evidence, or even argument, to counter or contest this evidence.  As such, Plaintiff has failed to show how this referral did not "bear some reasonable relation to the purpose" for which Plaintiff was committed, or that in handling this matter any named Defendant "so substantially departed from professional standards that their decision can only be described as arbitrary and unprofessional". Seling v. Young, 531 U.S. at 265 (2001); Patten, 274 F.3d at 845-846.

Therefore, Plaintiff's claims asserted as constitutional violations are without merit and should be dismissed.

## II.

### (ADA/Rehabilitation Act Claim)

It is unclear exactly what Plaintiff is asserting with respect to his citations to the ADA or § 504 of the Rehabilitation Act, or how those statutes apply to the claims he is asserting.  The only time Plaintiff references these statutes is in his "Amendment", but even then Plaintiff does not address how these statutes apply to his claims or how a violation of either of these two statutes has occurred.[6]  In any event, no named Defendant is subject to liability under either of these two statutes. Cf. Smith v. South Carolina Department of Corrections, No. 03-795, 2003 WL 23851177, at n. 1 (D.S.C. Aug. 11, 2003); Anderson v. South Carolina Department of Corrections, No. 09-402, 2009

---

[6]Consistent with this omission, neither Plaintiff nor the Defendants even discuss these statutes as part of their filings for and against summary judgment.



WL 5031305 at n. 7 (D.S.C. Dec. 14, 2009). Therefore, to the extent Plaintiff has even intended to assert a claim under these statutes, these claims are subject to dismissal for failure of the Plaintiff to sue a proper party Defendant with respect to these claims.

Additionally, even if Plaintiff had sued the proper party Defendant (which in this case would have been the South Carolina Department of Mental Health, which is a state agency), States have sovereign immunity from suit under Title II of the ADA absent a corresponding constitutional violation. See Wessel v. Glendening, 306 F.3d 203 (4th Cir. 2002), overruled in part by United States v. Georgia, 546 U.S. 151, 159 (2006). Hence, as the undersigned has already found that Plaintiff has failed to submit evidence sufficient to give rise to a genuine issue of fact as to whether a constitutional violation has occurred in this case, Plaintiff's claims under the ADA would be subject to dismissal even if a proper party Defendant had been named, and must therefore be dismissed. Cf. Capell v. Carter, No. 13-586, 2014 WL 197756 (D.S.C. Jan. 16, 2014); but see, Sossamon v. Texas, 131 S.Ct. 1651, 1662 (2011) [Discussing sovereign immunity with respect to Rehabilitation Act claim].

**III.**

**(Omnibus Adult Protection Act)**

Plaintiff also references the Omnibus Adult Protection Act in his "Amendment". See S.C.Code Ann. § 43-35-5, et seq.; although, as is the case with Plaintiff's citation to the ADA and the Rehabilitation Act, Plaintiff fails to actually state in his "Amendment" what exactly his claim under the Adult Protection Act would be. Even so, while a private cause of action may exist under the Omnibus Adult Protection Act, Plaintiff has again failed to name a proper party defendant for any state law claims being asserted, as the private cause of action provided for would be a tort for

"abusing, neglecting, or exploiting" a vulnerable adult[7] as defined in the Act; <u>Williams-Garrett v.</u>

<u>Murphy</u>, 106 F.Supp.2d 834, 843 (D.S.C. 2000); and the South Carolina Tort Claims Act provides

that the proper party Defendant for any such claim would be the Department of Mental Health. <u>See</u>

S.C. Code Ann. § 15-78-70(c). Therefore, any such claim is subject to dismissal for failure to name

a proper party Defendant.

   Moreover, even if Plaintiff *had* named a proper party Defendant, since the federal

claims Plaintiff is asserting are subject to dismissal, this Court should not retain jurisdiction over

any such exclusively state law cause of action in any event. <u>See</u> <u>Lovern v. Edwards</u>, 190 F.3d 648,

655 (4th Cir. 1999) ["[T]he Constitution does not contemplate the federal judiciary deciding issues

of state law among non-diverse litigation"]. Rather, when federal claims presented in a case

originally filed in state court are dismissed, any remaining state law claims should be remanded back

to state court for resolution under the general doctrine developed in <u>United Mine Workers v. Gibbs</u>,

383 U.S. 715 (1966). <u>See</u> <u>In Re</u> <u>Conklin</u>, 946 F.2d 306, 324 (4th Cir. 1991); <u>Nicol v. Imagematrix,</u>

<u>Inc.</u>, 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); <u>Mills v. Leath</u>, 709 F.Supp. 671, 675-676 (D.S.C.

1988); <u>Carnegie-Melon v. Cohill</u>, 484 U.S. 343 (1988); <u>Taylor v. Waters</u>, 81 F.3d 429, 437 (4th Cir.

1996). This doctrine recognizes the state court's role in determining whether dismissal of state law

claims is warranted, and, if such a dismissal were to be denied, that it would be much more

appropriate for any such state law claims to be considered and tried by the state courts.

<div align="center">

**Conclusion**

</div>

   Based on the foregoing, it is recommended that the Defendants' motion for summary

---

   [7]Since Plaintiff is in a facility operated by the Dept. of Mental Health, he is considered a "vulnerable adult" under the statute and protected. <u>See</u> S.C. Code Ann. § § 43-35-10 and 43-35-10(4).



judgment be **granted**, and that this case be **dismissed**.[8]

The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

August 31, 2016
Charleston, South Carolina

_____

[8]If the Court adopts the recommendations set forth herein with respect to Plaintiff's federal claims, then out of an abundance of caution, and in consideration of Plaintiff's pro se status, the Court may want to consider remand of any state law claim Plaintiff may be asserting to the state courts for disposition, rather than outright dismissal of this claim at this time.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

<div align="center">

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

</div>

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

