IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael E. Hamm, | ) |
| | ) No. 9:15-cv-4400-RMG |
| Plaintiff, | ) |
| | ) ORDER |
| vs. | ) |
| | ) |
| Harold Alexander, NFN Hickman, NFN White, NFN Trapp, and Galen Sanders, | ) |
| | ) |
| Defendants. | ) |

This matter comes before the Court on the Report and Recommendation (R & R) of the Magistrate Judge (Dkt. No. 28), recommending that the Defendants' motion for summary judgment be granted and that the Plaintiff's case be dismissed with respect to the federal claims. Plaintiff has filed objections to the R & R. (Dkt. No. 31). For the reasons stated below, the Court **ADOPTS** the R & R as the order of this Court.

### I. Background

Plaintiff is a civilly committed inmate under the South Carolina Sexually Violent Predator's Act (SVPA), S.C. Code Ann. §44-48-60, *et seq.* Plaintiff is confined at the Broad River Correctional Institution as part of the South Carolina Department of Corrections, where he is in the Sexually Violent Predator Treatment Program (SVPTP). Through both his complaint and amended complaint, Plaintiff brings claims pursuant to 42 U.S.C. §1983; the Americans with Disabilities Act (ADA) and/or § 504 of the Rehabilitation Act; and the Omnibus Adult Protection Act, S.C. Code Ann. § 44-35-5, *et seq.* Through these claims, plaintiff alleges that the medical care and treatment he was provided was inadequate, that the medical staffing at the

facility where he is held is "below the accepted professional standards," and that the conditions of his confinement are "impermissibly punitive and restrictive in the medical care and treatment area." (Dkt. No. 1-1).

Plaintiff asserts five specific issues. (*See* Dkt. No. 1-1). With respect to the first issue, Plaintiff alleges he suffers from COPD (emphysema), and he uses his inhaler at night to help him breathe better. (*Id.* at 6). Plaintiff claims that on or about August 20, 2015, he asked Nurse Trapp for his inhaler and that Nurse Trapp could not find his inhaler. (*Id.*). Plaintiff alleges his inhaler went missing and he was deprived of a new inhaler until August 25, 2015. (*Id.*). Plaintiff contends not having his inhaler caused him sleep deprivation and the inability "to breath[e] right." (*Id.*). Plaintiff alleges that allowing his inhaler to "just disappear" constitutes "deliberate indifference" to his serious medical needs. (*Id.*).

With respect to the second issue, Plaintiff alleges he has a medical condition in both of his legs, which he states "they" believe is fibromyalgia. (*Id.* at 9). Plaintiff proclaims that he uses a TENS unit daily because his brain tells his legs that they are damaged when they are not, and that the TENS unit relieves this pain by sending "an electrical pulse to trigger the pain inhibitors to stop the pain receptor's from firing continuously." (*Id.*). Plaintiff alleges that between August 19, 2015 and August 25, 2015 he was deprived of new batteries for the TENS unit causing the unit to go dead after 30 minutes, to not work at its normal intensity, or to not work at all. (*Id.*). Plaintiff maintains that Nurse Supervisor Sanders was aware of the issues with the TENS unit and that his failure to provide new batteries to Plaintiff was "deliberate indifference to [his] medical needs and care" causing him "infliction of pain and suffering." (*Id.*).

2

With respect to the third issue, Plaintiff alleges Nurse Hickman put a battery in the TENS unit backwards and she "fought to get it back out," which bent the negative prong and caused the unit to not work. (*Id.* at 15). Plaintiff asserts that fixed the TENS unit by using a pen to pull the prong out. (*Id.*). Plaintiff claims after he fixed the unit, Nurse Hickman told him they had ordered him a new one. When Plaintiff told her he had fixed the unit, Nurse Hickman told him he was not supposed to have done that. (*Id.*). Plaintiff alleges he was written up for using a pen to fix the TENS unit. (*Id.* at 16).

With respect to the fourth issue, Plaintiff alleges that he was called before the Behavior Management Committee on August 28, 2015, to "answer for the said charge" noted in issue three. (*Id.* at 24). Plaintiff claims that even though the referral notice states that he is encouraged to provide written information to the Committee prior to the hearing date to include potential witnesses, that he was never given the chance to do this. (*Id.* at 24). Plaintiff asserts "since no consequences have been handed down or the charges dropped" the outcome of the tribunal is still hanging over his head. (*Id.* at 25).

With respect to the fifth issue, Plaintiff alleges he is an ordained minister with full credentials as a "true worshiper" and that as part of his religion he does not believe that women should sit in judgment of him. (*Id.* at 29).

Plaintiff filed this action *pro se* in the South Carolina Court of Common Pleas, Richland, County on September 10, 2015. (*Id.* at 1). The Defendants removed this case on the basis of federal question jurisdiction to this United States District Court on October 29, 2015 (Dkt. No. 1). On April 1, 2016, Defendants filed a motion for summary judgment (Dkt. No. 21), which included the affidavits of Kimberly B. Rudd, M.D. (Dkt. No. 21-2), Nurse Harold Alexander (Dkt. No. 21-3), Nurse Charlene Hickman (Dkt. No. 21-4), and Cynthia Helff, Program Manager

3

I for SVPTP (Dkt. No. 21-5). Plaintiff filed a response in opposition to the Defendants' motion for summary judgment on May 17, 2016. (Dkt. No. 25). Defendants filed a reply on May 27, 2016 (Dkt. No. 26), and Plaintiff filed a sur reply on June 16, 2016 (Dkt. No. 27). On August 31, 2016, the Magistrate Judge issued an R & R, recommending Defendants' motion for summary judgment be granted and the case dismissed with respect to the federal claims (Dkt. No. 28).[1] Plaintiff filed objections to portions of the R & R on September 22, 2016. (Dkt. No. 31). In addition to an articulation of objections to specific portions of the R & R, Plaintiff produced an additional 84 pages in support of his objections. (Dkt. No. 31-1).

## II. Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court is charged with making a de novo determination of those portions of the R & R or specified proposed findings or recommendation to which objection is made. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)); accord Fed. R. Civ. P. 72(b).

However, as to the portions of the R & R to which no objection is made, this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 71 advisory committee note). Additionally, the Court need not give any

---

[1] The Magistrate concluded that if the R & R was adopted, this Court, in consideration of Plaintiff's *pro se* status, may want to consider remand of any state law claims. (Dkt. No. 28 at 20, n. 8).

4

explanation for adopting the R & R in the absence of specific objections by the parties. *See Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983) ("Absent objection, we do not believe that any explanation need be given for adopting the report.").

In reviewing this complaint, the Court is mindful of Plaintiff's *pro se* status. This Court is charged with liberally construing the pleadings of a *pro se* litigant. *See, e.g., De 'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). The requirement of a liberal construction does not mean, however, that the Court can ignore a *pro se* plaintiff's clear failure to allege facts that set forth a cognizable claim, or that a court must assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012).

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hos. V. Am. Nat'l. Red Cross*, 101, F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Caltrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative

5

allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp. Inc.*, 190 F.3d 285, 287 (4th Cir. 1999).

### III. Discussion

Plaintiff objects to the R & R's recommendation that summary judgment be granted on three grounds. The Court will address each in turn.

First, Plaintiff contends that as per S.C. Code Ann. § 44-48-170, there is a constitutional requirement for the care and treatment of an involuntary detainee. (Dkt. No. 31 at 1; *see also* S.C. Code Ann. § 44-48-170 ("[t]he involuntary detention or commitment of a person to this chapter must conform to constitutional requirements for care and treatment.")). Plaintiff asserts that the legislature's use of the term "and" in S.C. Code Ann. § 44-48-170 evidences the legislature's intent that both care *and* treatment should be provided to an involuntary detainee. (Dkt. No. 31 at 1). Plaintiff argues he was deprived of care because care is "not punishment for trying to do the right thing" or "ha[ving] to go through chronic pain due to the actions of the defendants." (Dkt. No. 31 at 1). Plaintiff's objection contains no new analysis or arguments.

To the extent that Plaintiff is alleging in this lawsuit that his constitutionally protected rights are being violated because he is receiving inadequate medical care for his complaints, in order to survive summary judgment Plaintiff must have evidence sufficient to show that "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standard as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). Plaintiff has not presented or shown any new evidence to persuade this Court otherwise. As such, this objection is without merit.

6

Second, Plaintiff objects on the grounds that because he has never met or written to Dr. Kimberly Rudd, Dr. Rudd cannot "give her professional opinion to a certain degree of medical certainty [that] the five days that [he] was without an inhaler in August 2015 most probably did not present any medical issues or concerns for him." (Dkt. No. 31 at 2). Additionally, Plaintiff asserts that "Dr. Smith" is aware that he has trouble breathing. (*Id.*). Plaintiff contends during a prior examination by Dr. Smith, Dr. Smith noted that when Plaintiff exhales, all of the air is not expelled and carbon monoxide is trapped in his lungs. (*Id.*). However, Plaintiff's objections are irrelevant.

To survive summary judgment, a Plaintiff must provide medical evidence to show that he suffered a serious medical attack or complication during the time period at issue. *See Deans v. Wadman*, No. 12-662, 2013 WL 6050328, at*3 (D.S.C. Nov. 15 2013) ("Plaintiff who claims a delay in medical treatment rose to a constitutional violation must provide verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."). Further, decisions of medical professionals are presumptively valid, and Plaintiff offers no evidence to rebut Dr. Rudd's professional opinion. *See Youngberg*, 457 U.S. at 323. Accordingly, the Plaintiff's objections are overruled.

Third, Plaintiff contends that he was deprived of having a witness at the Behavior Management Committee hearing for the write up he received for altering the TENS unit. (Dkt. No. 31 at 14). Plaintiff explains that he tried to get a witness to the Behavior Management Committee hearing, but the one person in the medical clinic who signed to be a witness for the hearing was not present at the meeting. (Dkt. No. 31 at 13). Further, Plaintiff states "it is the job of the BMC to talk to witness." (Dkt. No. 31 at 14). However, Plaintiff's objection is irrelevant because the Defendants submitted an affidavit in conjunction with their motion for summary

7

judgment attesting that the Committee took no action on this referral and that Plaintiff suffered no adverse consequences as a result thereof. (*See* Dkt. No. 21-5). Further, Plaintiff has failed to submit any competent evidence, or even argument, to counter or contest this evidence. As such, Plaintiff has failed to show how this referral did not "bear some reasonable relation to the purpose" for which Plaintiff was committed, or that in handling this matter any named Defendant "so substantially departed from professional standard that their decisions can only be described as arbitrary and unprofessional." *Seling v. Young*, 531 U.S. 250, 265 (2001).

Lastly, in response to Helff's affidavit stating that Plaintiff was put on "Red Level" by the Behavioral Management Committed for an infraction on November 24, 2014 (Dkt. No. 21-5 at 2), Plaintiff has included in his objections reference to a July 25, 2014 medical entry referencing diarrhea and Imodium, and asserts that the date of his 2014 GI visit was reported incorrectly (Dkt. No. 31 at 14). Plaintiff also raises new allegations concerning his "Red Level" clearance in his objections. Plaintiff did not raise these allegations in his complaint. These new allegations do not address any specific error in the R & R. No amended pleadings have been filed, and "Plaintiff cannot use his objections to plead new facts not alleged in his complaint." *Vanzant v. Carolina Ctr. for Occupational Health*, No. 8:14-CV-03725-RBH, 2015 WL 5039302, at *4 (D.S.C. Aug. 25, 2015).

## Conclusion

For the reasons stated above the Court **ADOPTS** the R & R and **DISMISSES** the case without prejudice (Dkt. No. 28). This Court declines to exercise supplemental jurisdiction over

Plaintiff's state law claims under 28 U.S.C. § 1367(c) and REMANDS the remaining state law claims to the Richland County Court of Common Pleas.[2]

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

October 26, 2016
Charleston, South Carolina

---

[2] 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." A federal district court has discretion to remand to state court a removed case involving pendent claims upon proper determination that retaining jurisdiction over the case would be inappropriate. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343 (1988). Due to Plaintiff's *pro se* status, it would be inappropriate for this court to exercise supplemental jurisdiction over Plaintiff's state law claims.